01

02

03

04

05

06                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
07                            AT SEATTLE

08  HALINA BOJARSKI,                    )    CASE NO. C09-0833-MAT
                                        )
09          Plaintiff,                  )
                                        )
10      v.                              )
                                        )    ORDER RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE,                  )    DISABILITY APPEAL
    Commissioner of Social Security,    )
12                                      )
            Defendant.                  )
13  _____   )

14          Plaintiff Halina Bojarski appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied her application for Disability

16  Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33 and

17  1381-83f, after a hearing before an administrative law judge ("ALJ").   For the reasons set forth

18  below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

19                    I.    FACTS AND PROCEDURAL HISTORY

20          Plaintiff was born in 1956 and was 39 years old on her alleged onset date of disability.

21  (Administrative Record ("AR") 91.)   She has a master's degree in international business

22  management and worked as an international marketing consultant.   (AR 103, 108.)   Plaintiff

01 was last gainfully employed on October 1, 1995.  (AR 17, 102.)

02    Plaintiff asserts that she is disabled due to sleep related breathing disorder, chronic

03 fatigue, and obesity.  (AR 102.)   She alleged disability as of October 1, 1995.  (AR 94.)   Her

04 date last insured for DIB was December 31, 2000.  *Id.*

05    The Commissioner denied plaintiff's claim initially and on reconsideration.  (AR 33,

06 45-47, 49-50.)   Plaintiff requested a hearing, which took place on November 23, 2005. (AR 33,

07 1019-46.)   The ALJ heard testimony from the plaintiff.  (AR 1019-46.)   On January 3, 2006,

08 the ALJ issued a decision finding plaintiff not disabled.  (AR 33-41.)   On April 17, 2007, the

09 Appeals Council remanded the case to the ALJ for further administrative proceedings.   (AR

10 80-82.)

11    Pursuant to the Appeals Council Order, the ALJ held another hearing on July 31, 2007,

12 and heard testimony from the plaintiff.  (AR 994-1018.)   On November 14, 2007, the ALJ

13 issued another decision finding plaintiff not disabled within the meaning of the Act from her

14 alleged onset date of October 1, 1995, through her date last insured of December 31, 2000.

15 (AR 15-27.)   On April 30, 2009, the Appeals Council denied plaintiff's request for review of

16 the ALJ's decision (AR 7-9), making the ALJ's ruling the "final decision" of the Commissioner

17 as that term is defined by 42 U.S.C. § 405(g).   On June 17, 2009, plaintiff timely filed the

18 present action challenging the Commissioner's decision.   (Dkt. No. 1.)

19                    II.    JURISDICTION

20    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

21 405(g) and 1383(c)(3).

22 / / /

01              III.      STANDARD OF REVIEW

02              Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

03      social security benefits when the ALJ's findings are based on legal error or not supported by

04      substantial evidence in the record as a whole.   *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

05      Cir. 2005).   "Substantial evidence" is more than a scintilla, less than a preponderance, and is

06      such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

07      *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

08      Cir. 1989).   The ALJ is responsible for determining credibility, resolving conflicts in medical

09      testimony, and resolving any other ambiguities that might exist.   *Andrews v. Shalala*, 53 F.3d

10      1035, 1039 (9th Cir. 1995).   While the Court is required to examine the record as a whole, it

11      may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

12      *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).   When the evidence is susceptible to

13      more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

14      *Id.*

15              The Court may direct an award of benefits where "the record has been fully developed

16      and further administrative proceedings would serve no useful purpose."   *McCartey v.*

17      *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (*citing Smolen v. Chater*, 80 F.3d 1273, 1292

18      (9th Cir. 1996)).   The Court may find that this occurs when:

19              (1)   the ALJ has failed to provide legally sufficient reasons for rejecting the
                claimant's evidence; (2)   there are no outstanding issues that must be resolved
20              before a determination of disability can be made; and (3)   it is clear from the
                record that the ALJ would be required to find the claimant disabled if he
21              considered the claimant's evidence.

22

01 *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

02 erroneously rejected evidence may be credited when all three elements are met).

### IV. DISCUSSION

04       The Commissioner follows a five-step sequential evaluation process for determining

05 whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520, 416.920 (2000).  At step one, it

06 must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had

07 not engaged in substantial gainful activity during the period from her alleged onset date of

08 October 1, 1995, through her date last insured of December 31, 2000.  (AR 17.)  At step two,

09 it must be determined whether a claimant suffers from a severe impairment.  The ALJ found

10 plaintiff had the following severe impairments: sleep related breathing disorder, chronic

11 fatigue, and obesity.  (AR 17-20.)  Step three asks whether a claimant's impairments meet or

12 medically equal the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P,

13 Appendix 1.  The ALJ found that plaintiff did not have an impairment or combination of

14 impairments that met or medically equaled a listed impairment.  (AR 20.)  If a claimant's

15 impairments did not meet or equal a listing, the Commissioner must assess residual functional

16 capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability

17 to perform past relevant work.  The ALJ found that, through the date last insured, plaintiff had

18 the residual functional capacity to perform light work with the additional non-exertional

19 limitation that she should work in an air-conditioned work environment, such as in a normal

20 office setting.  (AR 21.)  If the claimant is able to perform her past relevant work, she is not

21 disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show

22 that the claimant can perform other work that exists in significant numbers in the national

01  economy, taking into consideration the claimant's RFC, age, education, and work experience.

02  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir.

03  1999).   The ALJ concluded that plaintiff was capable of performing her past relevant work as a

04  marketing consultant, which did not require the performance of work-related activities

05  precluded by her RFC.   (AR 26.)   Accordingly, the ALJ concluded that plaintiff was not

06  under a disability at any time from her alleged onset date of October 1, 1995, through her date

07  last insured of December 31, 2000.   (AR 27.)

08       Plaintiff argues that the ALJ erred in (1) rejecting evidence of disability after her date

09  last insured; (2) failing to call a medical expert to establish the onset date of disability; (3)

10  failing to develop the record; (4) evaluating her credibility; and (5) evaluating lay witness

11  testimony.   (Dkt. No. 11.)   She requests remand for an award of benefits or, alternatively, for

12  further administrative proceedings.   The Commissioner argues that the ALJ's decision is

13  supported by substantial evidence and should be affirmed.   (Dkt. No. 13.)   For the reasons

14  described below, the Court agrees with the plaintiff.

15  A.    Evaluation of Medical Evidence After Date Last Insured

16       The ALJ is responsible for determining credibility and resolving ambiguities and

17  conflicts in the medical evidence.   *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

18  Where the medical evidence in the record is not conclusive, "questions of credibility and

19  resolution of conflicts" are solely the functions of the ALJ.   *Sample v. Schweiker*, 694 F.2d

20  639, 642 (9th Cir. 1982).   In such cases, "the ALJ's conclusion must be upheld."   *Morgan v.*

21  *Commissioner of the Social Security Administration*, 169 F.3d 595, 601 (9th Cir. 1999).

22  Determining whether inconsistencies in the medical evidence "are material (or are in fact

01  inconsistencies at all) and whether certain factors are relevant to discount" the opinions of

02  medical experts "falls within this responsibility."  *Id.* at 603.

03        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

04  "must be supported by specific, cogent reasons."  *Reddick*, 157 F.3d at 7250.  The ALJ can do

05  this "by setting out a detailed and thorough summary of the facts and conflicting clinical

06  evidence, stating his interpretation thereof, and making findings."  *Id.*  The ALJ also may

07  draw inferences "logically flowing from the evidence."  *Sample*, 694 F.2d at 642.  Further, the

08  Court itself may draw "specific and legitimate inferences from the ALJ's opinion."

09  *Magallanes*, 881 F.2d at 755.

10        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

11  opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th

12  Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that

13  opinion "can only be rejected for specific and legitimate reasons that are supported by

14  substantial evidence in the record."  *Id.* at 830-31.  However, the ALJ "need not discuss all

15  evidence presented" to him or her.  *Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir.

16  1984)(citation omitted).  The ALJ must only explain why "significant probative evidence has

17  been rejected."  *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981); *Garfield v.*

18  *Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

19        In general, more weight is given to a treating physician's opinion than to the opinions of

20  those who did not treat the claimant.  *Lester*, 81 F.3d at 830.  On the other hand, an ALJ need

21  not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

22  inadequately supported by clinical findings" or "by the record as a whole."  *Batson v.*

01  *Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*,

02  278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).   An examining

03  physician's opinion is "entitled to greater weight than the opinion of a nonexamining

04  physician."  *Lester*, 81 F.3d at 830-31.   A non-examining physician's opinion may constitute

05  substantial evidence if "it is consistent with other independent evidence in the record."  *Id.* at

06  830-31; *Tonapetyan*, 242 F.3d at 1149.

07         To be entitled to disability insurance benefits, plaintiff "must establish that her

08  disability existed on or before" the date her insured status expired.  *Tidwell v. Apfel*, 161 F.3d

09  599, 601 (9th Cir. 1998); *see also Flaten v. Secretary of Health & Human Services*, 44 F.3d

10  1453, 1460 (9th Cir. 1995)(social security statutory scheme requires disability to be

11  continuously disabling from time of onset during insured status to time of application for

12  benefits, if individual applies for benefits for current disability after expiration of insured

13  status).   As noted above, plaintiff's date last insured was December 31, 2000.   Therefore, to

14  be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or

15  as of that date. *Id.*

16             1.    *Carl J. Brodie, M.D.*

17         Carl Brodie, M.D, has been plaintiff's treating rheumatologist since February 2004.

18  (AR 24, 76.)   On December 14, 2005, he provided a letter stating that plaintiff "is completely

19  disabled and has been completely disabled for at least as long as I have been working with her

20  and longer based on available history."   (AR 76-77.)   According to Dr. Brodie, plaintiff "is

21  plagued by multiple overlapping medical problems that cumulatively compromise her

22  function," including rheumatoid arthritis, cervical and lumbar degenerative disc disease, and

01  fibromyalgia.   *Id.*

02      The ALJ rejected Dr. Brodie's opinion, stating:

03      [Dr. Brodie's] opinion stretches some [sic] back at least four years to the date
        last insured during which he had never seen the claimant.   Although he referred
04      to "available history", he did not indicate the source of this history:   whether it
        is medical records or simply the claimant's allegations.   Furthermore, Dr.
05      Brodie did not trace current medical impairment with any findings or symptoms
        or diagnoses on or before the date last insured.   This opinion was not given
06      much weight in determining the claimant's RFC some 5 years earlier.

07  (AR 24.)

08      Medical reports "containing observations made after the period for disability are

09  relevant to assess the claimant's disability."   *Smith v. Bowen*, 849 F.2d 122, 1225 (9th Cir.

10  1988)(*citing Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)); *see also Lingenfelter v.*

11  *Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007)("As we explained in *Smith v. Bowen*, however,

12  'reports containing observations made after the period for disability are relevant to assess the

13  claimant's disability.'"); *Lester*, 81 F.3d at 832 (same).   Because medical reports "are

14  inevitably rendered retrospectively," they "should not be disregarded solely on that basis."   *Id.*

15  Accordingly, the ALJ's rejection of Dr. Brodie's opinion because it was rendered five years

16  after the expiration of plaintiff's insured status was not legally sufficient.

17      The Commissioner argues that "Dr. Brodie's opinion was not significant probative

18  evidence" for the period at issue.   (Dkt. No. 13 at 6.)   He relies on *Vincent*, for the

19  proposition that an ALJ need only explain why significant probative evidence has been rejected

20  and may ignore evidence that is not significant and probative.   *Id.*   As argued by plaintiff,

21  subsequent Court's have found that Vincent does not stand for that proposition.   *See Lester, 81*

22  *F.3d* at 832 n.10 (finding that "*Vincent* thus does not stand for the proposition that the

01 Commissioner is entitled to reject the treating or examining psychologist's opinion, merely

02 because the onset date of disability was before the first date on which the psychologist saw the

03 claimant"); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)(limiting the

04 holding in *Vincent* to cases involving lay testimony that conflicted with available medical

05 evidence). Thus, the Commissioner's reliance on *Vincent* is misplaced. On remand, the ALJ

06 should properly weigh Dr. Brodie's opinion or provide specific and legitimate reasons for

07 rejecting it.

08     *2. Don Uslan, MA*

09   Mental health and rehabilitation counselor Don Uslan, M.A., M.B.A., began seeing

10 plaintiff in August 2003. (AR 489-544.) On November 21, 2005, he provided a thirty-six

11 page report entitled Vocational Rehabilitation and Mental Health Evaluation (AR 853-904), in

12 which he opined that plaintiff is "totally and completely disabled from any and all employment,

13 be it full or part time, in any exertional level of employment." (AR 884.) He based his

14 opinion, in part, on his review of the medical documents, stating that plaintiff's "condition has

15 lasted many years, and may be expected to be permanent," and "has been an impairment to her

16 occupational functioning for many of these years . . . ." (AR 884.) The ALJ rejected Mr.

17 Uslan's opinion, stating only that he had not seen plaintiff before August 2003, and that there

18 was "no established connection between his description of the claimant's functioning in 2005

19 with her functioning on or before December 31, 2000." (AR 24.)

20   In order to determine whether a claimant is disabled, an ALJ may consider lay witness

21 testimony, such as testimony by nurse-practitioners, physicians' assistants, and counselors, as

22 well as "non-medical" sources, such as spouses parents, siblings, and friends. *Stout v.*

01 *Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 404.1513(d).   Such testimony

02 regarding a claimant's symptoms or how an impairment affects her ability to work is competent

03 evidence, and cannot be disregarded without comment.   *Dodrill v. Shalala*, 12 F.3d 915,

04 918-19 (9th Cir. 1993).   This is particularly true for "other sources" such as nurse practitioners,

05 physician assistants, and social workers.   *See* SSR 06-03p (noting that because such persons

06 "have increasingly assumed a greater percentage of the treatment and evaluation functions

07 previously handled primarily by physicians and psychologists," their opinions "should be

08 evaluated on key issues such as impairment severity and functional effects, along with the other

09 relevant evidence in the file.")   If an ALJ wishes to discount the testimony of a lay witness, he

10 must provide "reasons that are germane to each witness" and may not simply categorically

11 discredit the testimony.   *Dodrill*, 12 F.3d at 919.

12          As a mental health counselor, Mr. Uslan is considered an "other source" under the

13 regulations and his opinion must be considered.   As indicated above, "reports containing

14 observations made after the period for disability are relevant to assess the claimant's disability,"

15 and "should not be disregarded solely on this basis."   *See Smith*, 849 F.2d at 1226.   The ALJ's

16 rejection of Mr. Uslan's opinion constitutes reversible error that must be corrected on remand.

17          B.          <u>Onset Date of Disability</u>

18          For social security purposes, "the critical date is the date of onset of disability, not the

19 date of diagnosis."   *Swanson v. Sec. of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir.

20 1985).   "The onset date of disability is the first day an individual is disabled as defined in the

21 Act and the regulations."   SSR 83-20; *Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir.

22 1991).   Where, as here, the cause of a plaintiff's disability is not traumatic, a determination of

01 the onset of disability involves primarily an assessment of the medical evidence. *See* SSR

02 83-20. Where a claimant's allegation as to the onset date conflicts with the medical evidence,

03 additional development may be required. *Id*. ("[T]he established onset date must be fixed

04 based on the facts and can never be inconsistent with the medical evidence of record."). *See*

05 *also Armstrong v. Commissioner SSA*, 160 F.3d 587, 589-91 (9th Cir. 1998)(finding date of

06 onset unclear and that the ALJ erred in failing to call a medical expert before inferring an onset

07 date).

08         The ALJ must give convincing rationale for the onset date selected. SSR 83-20. That

09 date should be set on the date when it is most reasonable to conclude that the impairment was

10 severe enough to cause the inability to engage in substantial gainful activity for at least twelve

11 months. *Id.* Under Social Security Ruling 83-20, the following guidelines should be used to

12 determine the date of onset of disability:

13       With slowly progressive impairments, it is sometimes impossible to obtain
      medical evidence establishing the precise date an impairment became disabling.

14       Determining the proper onset date is particularly difficult, when, for example,
      the alleged onset and the date last worked are far in the past and adequate

15       medical records are not available. In such cases, it will be necessary to infer the
      onset date from the medical and other evidence that describe the history and

16       symtomatology of the disease process. Particularly in the case of slowly
      progressive impairments, it is not necessary for an impairment to have reached

17       listing severity . . . before onset can be established. . . . In determining the date of
      onset of disability, the date alleged by the [claimant] should be used if it is

18       consistent with all the evidence available. When the medical or work evidence
      is not consistent with the allegation, additional development may be needed to

19       reconcile the discrepancy. However, the established onset date must be fixed
      based on the facts and can never be inconsistent with the medical evidence of

20       record. . . . In some cases, it may be possible, based on the medical evidence to
      reasonably infer that the onset of a disabling impairment(s) occurred sometime

21       prior to the date of the first recorded medical examination, e.g., the date the
      claimant stopped working. How long the disease may be determined to have

22       existed at a disabling level of severity depends on an informed judgment of the

facts in the particular case.   This judgment, however, must have a legitimate medical basis.   At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred.

SSR 83-20.   *See also Armstrong*, 160 F.3d at 590 (holding that "in this context 'should' means 'must'").   A medical expert is required if there is "either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date."   *Sam v. Astrue*, 550 F.3d 808, 811 (9th Cir. 2008); *see also Armstrong*, 160 F.3d at 590; *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991); *Morgan*, 945 F.2d at 1081-83.

In this case, there is substantial evidence that plaintiff was disabled at some point after her date last insured.   The key question, therefore, is whether the onset date preceded plaintiff's date last insured.   As discussed above, the ALJ did not provide legally sufficient reasons for rejecting the opinion of Dr. Brodie or Mr. Uslan.   Dr. Brodie opined that plaintiff has been completely disabled since at least February 2004, and "longer based on available history."   (AR 77.)   In addition, in November 2005 Mr. Uslan opined that plaintiff is "totally and completely disabled from any and all employment, be it full or part time."   (AR 884.)   In light of this testimony, the ALJ was required to obtain medical expert testimony to determine whether disability occurred prior to the expiration of plaintiff's insured status.   *See Armstrong*, 160 F.3d at 590.   The Court finds that the date of onset is unclear and that the ALJ committed reversible error by failing to call a medical expert to determine the onset date of plaintiff's disability.   *Id.*   On remand, the ALJ should enlist a medical expert to aide in determining the date of onset.

/ / /

01      C.      Duty to Develop the Record

02      The ALJ has a "'duty to fully and fairly develop the record and to assure that the

03  claimant's interests are considered.'"  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)

04  (quoting *Brown v. Heckler*, 713 F.2d 441,443 (9th Cir. 1983)).   This duty "is triggered only

05  when the evidence from the treating medical source is inadequate to make a determination as to

06  the claimant's disability."   20 C.F.R. § 416.912(e); *see also* SSR 96-5p; *Thomas*, 278 F.3d at

07  958.

08      Plaintiff argues that the ALJ specifically complained of a lack of medical evidence prior

09  to her date last insured, but failed to obtain any additional medical records.   (Dkt. No. 11 at

10  17-18.)   For example, the ALJ notes:

11          In reaching these conclusions about the existence of severe impairments, the
             [ALJ] has observed that most of the claimant's medical reports cover a time
12          period after her date last insured with relatively few documents existing on or
             before this date.
13

14  (AR 17.)

15          . . . It is also noted that these minimal findings concerning the claimant's mental
             status cover a time period after her date last insured and with no established
16          connection to her mental status on or before that date.

17  (AR 23.)

18

19          . . . [T]here is no established connection between [Mr. Uslan's] description of
             the claimant's functioning in 2005 with her functioning on or before December
20          31, 2000.

21  (AR 24.)

22  / / /

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01        . . . [plaintiff] reported to doctors at Harborview Medical Center in June 2001
          that she carried a diagnosis of chronic fatigue syndrome.   However, as noted
02        earlier in this decision, multiple visits to the Chronic Fatigue Clinic did not
          result in this diagnosis or any other specific diagnosis.

03

04   (AR 23.)

05        The record demonstrates plaintiff's well-founded concern that the record was not

06   adequately developed.   As plaintiff indicates, she began treatment at Harborview Medical

07   Center Chronic Fatigue Clinic in 1999, however, the earliest Harborview medical records in the

08   administrative record are from August 10, 2000.   (AR 543-73.)   In addition, on June 23, 1999,

09   plaintiff's treating primary care physician, Britton Georges, M.D., noted that plaintiff was

10   "seeing Dr. Robertson for severe fatigue."   (AR 595.)   However, Dr. Robertson's records are

11   not in the administrative record and the ALJ made no attempt to obtain them.   Moreover, the

12   ALJ rejected plaintiff's testimony, in part, because "[t]here is an inconsistency between the

13   medical diagnoses found by treating and examining physicians [and] the diagnoses alleged by

14   the claimant.   For instance, she reported to doctors at Harborview Medical Center in June 2001

15   that she carried a diagnosis of chronic fatigue syndrome . . . [h]owever, as noted earlier in the

16   decision, multiple visits to the Chronic Fatigue Clinic did not result in this diagnosis or any

17   other specific diagnosis."   (AR 23.)   The ALJ's statements indicate that the record was

18   ambiguous or inadequate and thus triggered the ALJ's duty to make every reasonable effort to

19   fully and fairly develop the record.

20        It is incumbent upon an ALJ to obtain additional information from a doctor or medical

21   facility if the ALJ determines that he needs to know more about the doctor's opinion in order to

22   properly evaluate it.   *See Smolen*, 80 F.3d at 1288 (holding that, where an ALJ thought he

01 needed to know the basis of the doctor's opinions in order to evaluate them, the ALJ had a duty

02 to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting

03 further questions to them); *see also Webb*, 433 F.3d at 687.   The ALJ is directed to develop the

04 record further in order to make an accurate determination of plaintiff's disability, including

05 obtaining medical records prior to her date last insured, and make a new assessment of

06 plaintiff's residual functional capacity.

07      D.    <u>Plaintiff's Credibility</u>

08      Because this case is being remanded for the reasons detailed above, the Court eschews

09 an exhaustive analysis of the ALJ's credibility determination.   In light of the fact that the Court

10 has found that the ALJ failed to properly evaluate the opinions of Dr. Brodie and Mr. Uslan, and

11 because credibility determinations are inescapably linked to conclusions regarding medical

12 evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue

13 remanded.   After re-evaluating the medical evidence of record, the ALJ will be in a better

14 position to evaluate the plaintiff's credibility.   To this end, the ALJ is reminded that he must do

15 more than make general findings; rather, when evaluating a claimant's credibility, the ALJ

16 "must specifically identify what testimony is credible and what testimony undermines the

17 claimant's complaints."   *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)(internal

18 quotations omitted).   On remand, the ALJ should properly assess plaintiff's testimony, and

19 provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

20      E.    <u>Lay Witness Testimony</u>

21      In order to determine whether a claimant is disabled, an ALJ must consider lay witness

22 testimony concerning a claimant's ability to work.   *Dodrill*, 12 F.3d at 918-19; *see also Stout*,

01 454 F.3d at 1053; 20 C.F.R. § 404.1513(d).   Lay testimony "is not the equivalent of 'medically

02 acceptable ... diagnostic techniques' that are ordinarily relied upon to establish a disability."

03 *Vincent*, 739 F3d at 919 (quoting 42 U.S.C. § 423(d)(3)).   However, lay testimony regarding a

04 claimant's symptoms or how an impairment affects her ability to work is competent evidence,

05 and cannot be disregarded without comment.   *Dodrill*, 12 F.3d at 918-19.   If an ALJ wishes to

06 discount the testimony of a lay witness, he must provide "reasons that are germane to each

07 witness" and may not simply categorically discredit the testimony.   *Dodrill*, 12 F.3d at 919.

08                         *1.      Julie Wurtz*

09         Plaintiff asserts that the ALJ erred in rejecting a letter submitted to the ALJ in July 2007

10 by her sister Julie Wurtz.   (Dkt. No. 11 at 15.)   Ms. Wurtz's letter indicated that plaintiff was

11 active and energetic, and enjoyed sports, outdoor activities, traveling, studying, and working

12 abroad.   (AR 155.)   She described visits with her sister in 1978, the 1980's, and 1992, during

13 which plaintiff participated in activities such as running, hiking, skiing, swimming, and

14 gardening.   (AR 155-56.)   In addition, Ms. Wurtz explained that she had learned "[o]ver the

15 phone . . . that [plaintiff had] completed many renovations in her home such as installing wood

16 floors, wood trim and painting various rooms[.]   All of which turned out beautifully but today

17 her hands hurt so much that she is unable to complete these types of renovations."   (AR 156.)

18 She further stated:

19         In the summer of July 2001, my children and I were to spend vacation time with
           Halina and her children.   One of her main concerns before going to Florida was
20         for her to be able to physically keep up with the children and to stay awake.
           Her physician prescribed "speed" in order for her to stay awake.   Even with the
21         prescription she was too tired to go to Disney World and had to sleep while I
           took the children to Disney World.

22

01 (AR 156.)

02     The ALJ rejected Ms. Wurtz statements, finding that most of the letter "predates the

03 claimant's alleged disability onset date," and therefore "provides no evidence of the claimant's

04 current impairments and their effect on her ability to function." (AR 24.) The ALJ noted that

05 "Ms. Wurtz's statements fail to provide a contrast between the claimant's current condition and

06 her functional status in the 1980's and in 1992." *Id.* The ALJ also found that Ms. Wurtz's

07 report regarding the renovations she learned about "over the phone," "did not even establish

08 that Ms. Wurtz saw any of the renovations or that the claimant was the individual who did the

09 renovations," and that her conclusion that plaintiff is unable to complete these types of

10 renovations because her hands hurt "appears to be a recitation of the information that the

11 claimant told her." (AR 25.) Finally, the ALJ rejected Ms. Wurtz's statements regarding her

12 vacation to Disney World because that experience occurred after plaintiff's date last insured.

13 *Id.*

14     The Court agrees with the plaintiff that the ALJ erred in rejecting Ms. Wurtz's

15 statements on the basis that they did not concern the relevant time period. Ms. Wurtz

16 explained that in 2001 plaintiff's fatigue was so severe she was unable to go to Disney World

17 with her family, and that she is unable to complete renovation projects because "her hands

18 hurt." (AR 155-56.) These statements contrast with Ms. Wurtz's observations that plaintiff

19 was an active and energetic person prior to her alleged onset date. *See id.* "Descriptions by

20 friends and family members in a position to observe a claimant's symptoms and daily activities

21 have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232

22 (9th Cir. 1987). While it is unclear precisely when Ms. Wurtz observed these changes in

01  plaintiff's condition, it is certainly possible that it included a time period between her alleged

02  onset date of October 1, 1995, and her date last insured of December 31, 2000.   For that reason,

03  the ALJ should have inquired further regarding the statement by plaintiff's sister provided in

04  July 2008.   The ALJ did not state a germane reason to reject the lay testimony of Ms. Wurtz.

05              *2.   Jeanne Bojarski*

06          On July 23, 2007, petitioner's sister Jeanne Bojarski submitted a letter to the ALJ,

07  describing plaintiff's difficulty functioning during two visits in 2000.   (AR 148.)   She wrote:

>       In the year 2000, we had the opportunity to visit twice in person . . . .   When I
>       was in Seattle in the fall, we met for brunch.   We then went back to her home
>       and she showed me around.   But after that, she was too tired to visit any further,
>       she had to go to lie down and rest.   After many years, she could only manage to
>       be up and functional for two hours for our reunion.
>
>       When she came to Kansas City to visit it was the same story.   She made it here
>       with the aid of her two children and was able to attend the graduation ceremony.
>       But when I wanted to take her sightseeing the next afternoon, she was unable to
>       go because she was too tired and needed to rest.   Also walking around is
>       extremely difficult for her because of her pinched nerve disability . . . .   She
>       cannot walk very far.

15  (AR 148.)

16          The ALJ rejected Ms. Bojarski's testimony noting only, "[w]hile Ms. Bojarski

17  described the claimant as quite fatigued when she saw her in 2000 and also during the

18  claimant's visit to Kansas City, the claimant was able to attend a brunch and to attend a

19  graduation ceremony on these different occasions."   (AR 25.)   Plaintiff complains that the

20  ALJ did not provide a reason for rejecting Ms. Bojarski's letter, but merely comments on it.

21  (Dkt. No. 11 at 22-23.)   The Court agrees with the plaintiff.   An ALJ may reject statements if

22  they are inconsistent with the record as a whole, or inconsistent with the medical evidence.

*See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). The fact that plaintiff was able to attend a brunch and a graduation ceremony is not inconsistent with Ms. Bojarski's statement that she "could only manage to be up and functional for two hours," but was otherwise "too tired and needed to rest." The ALJ did not state a germane reason to discount the lay witness testimony offered by Ms. Bojarski.

### 3. *Alexandra Bojarski-Stauffer*

In July 2007, plaintiff's niece Alexandra Bojarski-Stauffer submitted a letter describing plaintiff's symptoms and daily activities. (AR 147.) She wrote,

> Now we don't take trips anymore because it is difficult and unpleasant for [plaintiff] to travel with her problems. Now when I visit her we are lucky if we get to go on a trip to Costco not because she became older but because she is sick.
> . . . She is continuously tired and suffers from chronic fatigue as well as severe back pain. When we get back from that special trip to Costco she has to lay down because the trip is both physically and mentally demanding. It is during this time that I cook for my cousins, run with the two energetic poodles and help clean the house, things she used to be able to do frequently without pause.

(AR 147.)

The ALJ rejected these statements, stating that Ms. Bojarski-Stauffer "wrote her aunt had been very active in the past. However, the claimant's failure take [sic] less trips with Ms. Bojarski-Stauffer does not establish disability or the inability to do work activity." (AR 25.) The ALJ's reasons were not sufficiently specific to support the ALJ's rejection of Ms. Bojarski-Stauffer's testimony. As the Commissioner concedes, the ALJ did not fully address Ms. Bojarski-Stauffer's observations regarding the severity of plaintiff's impairment, i.e., that plaintiff is continuously tired and must lie down after a trip to the store. (Dkt. No. 13 at 15.) "Disregard of this evidence violates the Secretary's regulation that he will consider

01 observations by non-medical sources as to how an impairments affects a claimant's ability to

02 work." *Sprague*, 812 F.2d at 1232. On remand, the ALJ should reevaluate these statements.

03     *4. Steve Plate*

04   On July 30, 2007, plaintiff's husband Steve Plate, wrote a letter stating:

05   After a business trip to Korea in 1995, Halina contracted spinal meningitis and
  she started to become less active. . . . . Halina is now tired much of the time.

06   She has trouble keeping focus and remembering daily schedules and tasks. She
  will occasionally get spurts of energy and be active one day and then burn

07   herself out so that she will be hardly able to get out of bed for a few days. . . . She
  adopted several dogs so that would be motivated [sic] to walk every day. But

08   she has been unable to walk more than 1 or 2 blocks at a time. We took a
  vacation this spring and Halina was dependent on both our son and me for

09   support and assistance. It is inconceivable that she could lead a group a of
  people on an international trip today. I do not think that Halina could hold a

10   professional job today because she could not reliably meet the commitments that
  a job requires.

11

12 (AR 153.) The ALJ rejected his testimony, noting that it was "vague" and "focused on the

13 claimant's activity level prior to her alleged disability onset date," and because "[h]e entered

14 into the area of vocational testimony, which is not his area of expertise. (AR 25.) The ALJ

15 should have considered this lay testimony to the extent that it was offered to show the severity

16 of plaintiff's impairment and how that impairment affected her ability to work. *See Bruce v.*

17 *Astrue*, 557 F.3d 1113, 1115-16 (9th Cir. 2009)("The ALJ [is] required to consider and

18 comment upon competent lay testimony, as it concerned how [claimant's] impairments impact

19 [her] ability to work.").

20     *5. Thalia Komninos*

21   On July 30, 2007, plaintiff's childhood friend Thalia Komninos wrote a letter

22 explaining:

I remember Halina's overall decline after her episode of spinal meningitis in 1995.   She always was tired, and couldn't keep up with the kind of schedule she previously maintained.   She still wanted to work, and tried to reduce her work load.   However, due to chronic fatigue and physical pain, she couldn't follow through with any professional commitments.   She sounded tired, depressed, and despairing in our phone calls. . . . Especially in recent years . . . [s]he often is overwhelmed with depression and despair about her physical limitations.   In our frequent phone calls, I also have recognized that she has trouble with concentration, memory, and mental processing.   I routinely call her to remind her to change her pain patch every third day.

(AR 150.)

The ALJ did not address Ms. Komninos' statements, he rejected them because she had learned this information from the plaintiff "second-hand" and did not have any "first hand information upon which to declare that the claimant was unable to work."   (AR 25-26.)   As the Commissioner concedes, the ALJ did not address all of Ms. Komninos' statements, including her observations that plaintiff had trouble with her concentration, memory, and mental processing, and that she had to remind her to change her pain patch.   The ALJ erred in failing to provide reasons for rejecting Ms. Komninos' observations regarding the severity of plaintiff's problems.

### 6.   *Linda Berg*

On November 14, 2005, plaintiff's friend Linda Berg wrote:

I have been acquainted with Halina Bojarski for five years.   Our sons attended Hamlin Robinson School in Seattle, WA, and we were part of a small group of Eastside parents who delivered our young sons to the HRS bus in the mornings and picked them up in the afternoon.
. . . She would often come to the bus stop in the afternoons having slept for most of the day.   In spite of her good intentions, Halina would be late for carpools, would nap while her son played with friends in their home.   There were several occasions when Halina did not show up at the bus stop to pick up her son, Colin.   One of the other parents or I would stay with him and attempt to

01     call her at home.   We would discover that she was asleep, unable to hear the
    alarm she set for herself and we would drive Colin home.   During our sons
02     fourth and final year of attendance at Hamlin Robinson School, Halina's
    teen-aged daughter often picked up her brother so Halina could continue to rest
03     at home.

04 (AR 146.)

05     The ALJ rejected Ms. Berg's testimony because "these conclusions appear to be

06 conclusions made by the claimant and communicated to Ms. Berg."   (AR 26.)   The Court

07 disagrees.   Ms. Berg described her observations of Ms. Bojarski's functioning.   The ALJ

08 erred by failing to provide germane reasons for rejecting Ms. Berg's statements.

09     F.     <u>Remand is Required</u>

10     The decision whether to remand for further proceedings or order an immediate award of

11 benefits is within the Court's discretion.   *See Harmen*, 211 F.3d at 1175-78.   Where no useful

12 purpose would be served by further administrative proceedings, or where the records has been

13 fully developed, it is appropriate to exercise this discretion to direct an immediate award of

14 benefits.   *Id.* at 1179 (noting "that the decision of whether to remand for further proceedings

15 turns upon the likely utility of such proceedings").   However, where there are outstanding

16 issues that must be resolved before a determination of disability can be made, and it is not clear

17 from the record that the ALJ would be required to find the claimant disabled if all the evidence

18 were properly evaluated, remand is appropriate.   *Id.*   Here, remand for further proceedings is

19 appropriate to allow the ALJ to remedy the above mentioned errors.   *Id.* at 1178.

20 / / /

21 / / /

22 / / /

### V.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and

REMANDED for further proceedings not inconsistent with the Court's instructions.

DATED this <u>25th</u> day of February, 2010.

_____
Mary Alice Theiler
United States Magistrate Judge